UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VILES & BECKMAN, P.A.; MARCUS W. VILES,

        Plaintiffs,

vs.                          Case No. 2:05-cv-558-FtM-29SPC

MARY P. LAGARDE,

        Defendant.
_____

**OPINION AND ORDER**

     This matter comes before the Court on Defendant's Motion for Partial Summary Judgment as to Plaintiffs' Continuing Obligation to Pay Defendant a Share of Firm Revenues (Doc. #19), filed on February 21, 2006. Plaintiffs Viles & Beckman, P.A., f/k/a Viles & Ellis, P.A. and Marcus W. Viles filed their Response on March 13, 2006. (Doc. #25.) On March 22, 2006, defendant filed a Motion for Leave to File a Reply (Doc. #28), with a proposed Reply attached. Defendant represents that plaintiffs oppose the Motion for Leave to File a Reply. The Court will grant the Motion for Leave to File a Reply, and will allow the Reply to be filed.

     After being divorced, two formerly married law partners signed a Shareholder Purchase Agreement (the Agreement) in which one agreed to sell all her shares of stock in their law practice to the other. Despite the fact that the Agreement recites that each had

access to counsel in reviewing, negotiating, and executing the Agreement, that each had full access to all financial information necessary to make an informed decision, and that the Agreement was negotiated at arms length (Doc. #2-2, ¶ 18), the two former partners now see the Agreement quite differently. Not surprisingly, this gave birth to the instant lawsuit. The matter is currently before the Court on a motion for partial summary judgment as to a portion of the declaratory judgment requested by plaintiffs. For the reasons set forth below, the Court grants the motion.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury or the factfinder at trial could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). In ruling on a motion for summary judgment, if there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

**II.**

It is undisputed that prior to a December 5, 2002, divorce plaintiff Marcus Viles (Mr. Viles) and defendant Mary P. La Garde, formerly Mary Pat Ellis (Ms. Ellis) were married and were the sole shareholders of a Fort Myers law firm then known as Viles & Ellis, P.A. (Viles & Ellis or the Firm). Both held fifty percent of the shares in Viles & Ellis.

On May 20, 2003, Mr. Viles and Ms. Ellis entered into the Agreement in which Mr. Viles agreed to purchase, and Ms. Ellis agreed to sell, all her shares of stock in Viles & Ellis upon the terms and conditions set forth in the Agreement (Doc. #2-2, p. 1). The Agreement stated that "[t]he parties are desireous of

confirming the contractual relationship between Mary Pat Ellis and Viles & Ellis, P.A. [the Firm] and Marcus Viles, individually, [Purchaser]."  (Id.)  The Agreement provided that the sale of the shares of stock would be effective at a March 31, 2003, closing, at which time Ms. Ellis would endorse her shares of stock and Mr. Viles would acquire all shares in Viles & Ellis, P.A. without recourse.  (Id.)

In consideration for Ms. Ellis selling her shares of stock, Mr. Viles agreed to perform certain terms and conditions.  These included payment for the stock shares, continued employment of Ms. Ellis by the Firm for a period of time, reimbursement of certain client costs, payment of certain expenses, and non-monetary conditions.

While the Agreement did not set a total price for the shares of stock, it did set forth a formula to be followed.  The parties agreed that Ms. Ellis's basis in the stock was $473,541.00.  The price of the stock, however, was not limited to this basis.  Mr. Viles agreed to pay Ms. Ellis $80,000.00 as partial payment toward Ms. Ellis's basis, to be paid by a lump sum of $20,000.00, plus monthly payments of $5,000.00 for the next twelve months pursuant to a Promissory Note guaranteed by the Firm.  (Id.)  In addition to this $80,000, Mr. Viles agreed to pay Ms. Ellis amounts equal to certain percentages of gross attorney's fees as recovered by the Firm.  Specifically, Mr. Viles agreed as follows:

> Purchaser shall pay to the Seller 15% of 100% of the gross attorney's fees recovered by the Firm on each case in which the Firm has been retained to provide legal services on or before December 31, 2005. Purchaser shall pay to Seller the sum of 10% of 100% of the gross attorney's fees recovered in each case on which the Firm has been retained to provide legal services between January 1, 2006 and December 31, 2006. Purchaser shall pay to the Seller 5% of 100% of the gross attorney's fees recovered on each case in which the Firm is retained to provide legal services from January 1, 2007 to December 31, 2007. All payments under this subparagraph are to be paid directly to Seller from the Trust Account of the Firm at the same time that either the client is paid or the Firm is paid, whichever first occurs. All sums received by the Seller under this subparagraph shall first be applied to reimburse Seller for her basis in the Viles & Ellis, P.A. stock. All such funds paid in excess of Seller's basis as of March 31, 2003, will be applied to the total purchase price of the stock.

(Id. ¶ 2.) As further consideration for Ms. Ellis's stock, Mr. Viles agreed to reimburse her for 50% of all client costs advanced by the Firm prior to the closing date of the Agreement, to be paid at the time each case expense was reimbursed to the Firm. (Id. ¶ 3.)

In addition to paying for the shares of stock pursuant to the formula set forth above, the Agreement also imposed other conditions upon Mr. Viles and the Firm as consideration for the stock. First, on and after March 31, 2003, for so long as Ms. Ellis had the right to receive a fee on any of the Firm's cases as described in paragraph 2 of the Agreement, Mr. Viles and the Firm agreed to retain Ms. Ellis to provide legal services in an "of counsel" status as an employee of the Firm. (Doc. #2-2, ¶ 4.) During this "of counsel" period, Ms. Ellis had the right to

actively work on certain types of cases she selected, and "in addition to other payments set forth in this Agreement", was entitled to receive from the Firm and Mr. Viles 40% of the gross attorney fees recovered in each of these cases, to be paid directly from the Firm's trust account.  (Id.)

Second, Mr. Viles and the Firm agreed to employ Ms. Ellis for three years to consult with the Firm on marketing efforts, for which she would be paid a total salary of $180,000.00, payable in monthly installments of $5,000.00.  (Id. ¶ 13.)  During this time period, Ms. Ellis agreed not to compete with the Firm in Southwest Florida, which was defined as not advertising or marketing legal services (although Ms. Ellis could practice law) in Lee, Charlotte, Collier, and Hendry Counties for personal injury cases.

Third, Mr. Viles and the Firm agreed to pay certain other expenses on Ms. Ellis's behalf.  Mr. Viles and the Firm agreed to: (1) maintain errors and omissions insurance with Ms. Ellis named as an additional insured for as long as she had a fee interest in any of the Firm's cases, and to provide tail coverage after separation of the relationship between Ms. Ellis and the Firm if it is commercially available (id. ¶ 7); (2) maintain health, life, and disability insurance coverage for Ms. Ellis for so long as she had a right to receive a fee in any of the Firm's cases (id. ¶ 8); (3) to make contributions to Ms. Ellis's 401K and Retirement Plans at levels equal to contributions to Mr. Viles' plans, for as long as she retained the right to participate in a fee generated by any of

the Firm's cases (id. ¶ 11); and (4) to maintain and pay for Ms. Ellis's Florida law license, legal memberships, and Bar dues for as long as she retained the right to participate in the fee income of any of the Firm's cases (id. ¶ 12).

Fourth, Mr. Viles agreed to pay Ms. Ellis 50% of any loan repayment received by the Firm with regard to a $96,504.97 debt plus interest owed to Viles & Ellis, P.A. by the Lagarde Law Firm, PC, as a receivable and not to be included as fee income. Both Mr. Viles and the Firm agreed to execute a Promissory Note upon request confirming the assignment of 50% of that receivable to Ms. Ellis. (Doc. #2-2, ¶ 17.)

Finally, Mr. Viles and the Firm agreed to certain non-monetary items. These included: Holding Ms. Ellis harmless and indemnifying her from any debts or liabilities of the Firm (Doc. #2-2, ¶ 6); causing Ms. Ellis to be released from any personal guaranty or liability on Firm obligations, including lines of credit or loan indebtedness (id. ¶ 6); not making further draws on the Firm's line of credit until Ms. Ellis's name was removed from the Firm's credit line, and not incurring further loan indebtedness on behalf of Mr. Viles or the Firm in Ms. Ellis's name (id.); not diluting or reducing Ms. Ellis's fee interests in any matter or case without her prior written consent (id. ¶ 9); not alienating, selling, encumbering, or assigning the Firm's assets or stock for so long as Ms. Ellis retained a right to participate in the fee generated by any of the Firm's cases without her written permission (id. ¶ 10);

and conducting themselves in full compliance with all applicable Bar regulations and requirements and hold Ms. Ellis harmless and indemnify her for any and all grievances against the Firm or its attorneys, agents, employees or assigns (id. ¶ 15).

In addition to conveying the stock shares, Ms. Ellis agreed to provide "of counsel" legal services (Doc. #2-2, ¶ 4), marketing consultation services (id. ¶ 13), and allow her name and likeness to be used by the Firm in advertising through December 31, 2007 (id. ¶ 5).

After the March 31, 2006, closing, Mr. Viles operated Viles & Ellis as its sole shareholder until July 8, 2004.  At that time, Mr. Viles changed the name to Viles & Beckman, P.A., which is the other plaintiff in the instant action.  Plaintiffs continued to make payments to Ms. Ellis in accordance with the Agreement until October 26, 2005.

On August 26, 2005, Mr. Viles and Viles & Beckman initiated a declaratory action in the Circuit Court for the Twentieth Judicial Circuit in and for Lee County, Florida.  After Ms. Ellis was served with the Amended Complaint on November 8, 2005, she timely removed the action to federal court.  According to the Amended Complaint, plaintiffs seek a declaratory judgment stating that: (a) They have no obligation to continue paying Defendant a share of the Firm's revenues; (b) They have no obligation to continue to reimburse Defendant for the costs recovered by the Firm; (c) They have no obligation to continue to employ Defendant as a marketing director,

nor pay Defendant for same, or provide her with health insurance coverage; (d) They have no obligation to retain Defendant on an "of counsel" basis; and (e) They have no obligation to give Defendant access to the Firm's databases and financial records. (Doc. #2-1, p. 4-5.)  On November 23, 2005, defendant filed her Answer, Affirmative Defenses and Counterclaim, which alleges a breach of contract claim.  (Doc. #3-1.)  Defendant now moves for partial summary judgment as to the declaratory action, and asks the Court to find that plaintiffs have a continuing obligation to pay defendant a share of the Firm's revenues in accordance with the Agreement.

### III.

This case requires the Court to consider and apply Florida contract law.[1]  Florida contract principles are well-settled. "The construction of a contract is a question of law for the courts." AT & T Wireless Servs. of Fla., Inc. v. WCI Communities, Inc., 932 So. 2d 251, 254 (Fla. 4th DCA 2005). "Contract interpretation principles under Florida law require us to look first at the words used on the face of the contract to determine whether that contract is ambiguous."  Rose v. M/V "Gulf Stream Falcon", 186 F.3d 1345, 1350 (11th Cir. 1999)(citing Hurt v. Leatherby Ins. Co., 380 So. 2d

---

[1] "Under the Erie doctrine, a federal court adjudicating state law claims applies the substantive law of the state." Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1227 (11th Cir. 2005)(internal citation omitted); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

432 (Fla. 1980)); University of Miami v. Frank, 920 So. 2d 81, 86 (Fla. 3d DCA 2006)("Whether a contract term is ambiguous is a question of law for the court."). "A party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract." Mergens v. Dreyfoos, 166 F.3d 1114, 1117 (11th Cir. 1999)(quoting Medical Ctr. Health Plan v. Brick, 572 So. 2d 548, 551 (Fla. 1st DCA 1990))(internal quotation marks omitted). "[T]he terms of the contract should control where the rights and interests of the parties are definitely and clearly stated." American Exp. Fin. Advisors, Inc. v. Makarewicz, 122 F.3d 936, 940 (11th Cir. 1997). "When a contract is clear and unambiguous, the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of the language controls." AT & T Wireless, 932 So. 2d at 255.

On the other hand, "[w]hen a contract is ambiguous and the parties suggest different interpretations, the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties." AT & T Wireless, 932 So. 2d at 255. Thus, "when the terms of a written instrument are disputed and rationally susceptible to more than one construction, an issue of fact is presented which cannot properly be resolved by summary judgment." Chhabra v. Morales, 906 So. 2d 1261, 1262 (Fla. 4th DCA 2005)(citing Segal v. Rhumbline Int'l, Inc., 688 So. 2d 397, 398 (Fla. 4th DCA 1997)).

**IV.**

Ms. Ellis contends that she is entitled to partial summary judgment because the Agreement's language unambiguously provides that the total purchase price for her shares was not limited to a reimbursement of her "basis" in Viles & Ellis stock, and consequently plaintiffs have a continuing obligation to make payments in accordance with the payment formula. (Doc. #19-1, p. 8.) Specifically, defendant highlights the language in paragraph 2 of the Agreement, quoted in full earlier. (Doc. #3-2, p. 2, ¶ 2.) Plaintiffs agree that the purchase price of the shares was not limited to Ms. Ellis's basis, and concede that they have paid more than that amount to date. The Firm argues, however, that it never had an obligation under the Agreement. In addition, plaintiffs argue that for various reasons the amount paid to date completes their obligations under the Agreement.

The Court finds that the Agreement is clear and unambiguous as to the formula for payment of the price of Ms. Ellis's shares of Viles & Ellis stock; that the price was not limited to her basis in the stock; that plaintiffs were required to pay the $80,000.00 set forth in paragraph 1 and the amounts as calculated in paragraph 2; that plaintiffs were required to pay additional amounts pursuant to paragraph 2; that plaintiffs must continue to make payments in accordance with paragraph 2; and that plaintiffs obligations under paragraph 2 are not complete. Therefore, unless one of plaintiffs' argument is meritorious, defendant is entitled to partial summary

judgment as to plaintiff's obligations to continue to pay in accordance with the Agreement.

**A.**

The Firm argues that it never had any obligations under the Agreement, and therefore partial summary judgment must be denied as to it. The Firm asserts that it was not a party to the Agreement and that it received no consideration, and therefore it has no obligations, continuing or otherwise, under the Agreement. In her Reply, Ms. Ellis claims that the Firm is estopped from making this argument because the Firm adopted the obligations under the Agreement.

It appears clear that the Firm <u>was</u> a party to the Agreement. As noted earlier, the introductory paragraphs of the Agreement included the statement that "[t]he parties are desireous of confirming the contractual relationship between Mary Pat Ellis and Viles & Ellis, P.A. [the Firm] and Marcus Viles, individually, [Purchaser]." (Doc. #2-2, p. 1.) "The Firm" is a defined term in the Agreement for "Viles & Ellis, P.A." (<u>Id.</u>, first paragraph). Not only is the subject of the Agreement shares of stock in the Firm, but the Firm is repeatedly referenced throughout the Agreement, and is a specifically intended beneficiary of the Agreement. The Agreement is signed by all shareholders in the Firm, one in the capacity as seller and the other in the capacity as buyer.

Even if the Firm is not considered a formal party to the Agreement, the Court agrees with defendant that the undisputed facts establish that the Firm is bound by the Agreement. It is certainly true that under Florida law, "[g]enerally, the obligation of contracts is limited to the parties making them." Pozo v. Roadhouse Grill, Inc., 790 So. 2d 1255, 1260 (Fla. 5th DCA 2001)(internal quotation marks and citation omitted). However, "[i]f a person conduct[s] himself in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations." Ayala v. Murrell, 97 So. 2d 13, 15 (Fla. 1957). Viewing the evidence in the light most favorable to the Firm, it is undisputed that the Firm behaved in a manner to lead defendant to believe that the Firm had adopted Mr. Viles' contractual obligations as its own. Indeed, there is no other explanation for the Firm's conduct in the two and one-half years between the closing and its ceasing to make payments. As required under the Agreement, the Firm employed Ms. Ellis, contributed to her retirement account, and made payment to her from the Firm's account.

**B.**

The Firm next argues that it received no consideration, and therefore it has no obligations under the Agreement. The Court disagrees.

Under Florida law, "[t]he consideration required to support a contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee." Real Estate World Fla. Commercial, Inc. v. Piemat, Inc., 920 So. 2d 704, 706 (Fla. 4th DCA 2006). "It is not necessary that a benefit should accrue to the person making the promise. It is sufficient that something of value flows from the person to whom it is made, or that he suffers some prejudice or inconvenience and that the promise is the inducement to the transaction." Id. (internal citations omitted). "The law recognizes that it is immaterial whether there is any actual pecuniary loss to the promisee or actual pecuniary benefit to the promisor; inadequacy of consideration does not render it insufficient to support a promise." Lamborn v. Slack, 107 So. 2d 277, 281 (Fla. 2d DCA 1958). "The detriment which will constitute a consideration for a promise need not be an actual loss to the promisee. It is sufficient if he does something that he is not legally bound to do." Mangus v. Present, 135 So. 2d 417, 418 (Fla. 1961).

As the Firm anticipates, there is ample consideration shown on the face of the Agreement. The Firm received Ms. Ellis's continued legal services in an "of counsel" capacity; it received Ms. Ellis's marketing consulting services; and it received the right to use Ms. Ellis's name and likeness in advertising through December 31, 2007. The fact that the Firm and Mr. Viles now disclaim any value to this

-14-

consideration is immaterial.  Without the Agreement, Ms. Ellis would not have been legally bound to provide her services, name, or likeness to the Firm during the relevant period.  Thus, the Court finds that plaintiffs' argument of no consideration for the Agreement is without merit.

## C.

Mr. Viles now asserts that the Agreement he helped draft, signed, and at least partially completed is unenforceable because: (1) there is no severability clause; (2) compliance with paragraphs 8, 11, and 14 is impossible; and (3) the fee-sharing provisions and indemnification clause violate Rules 4-1.5 or 4-5.6 of the Florida Rules of Professional Conduct.  The Court finds that none of these reasons preclude partial summary judgment.

**(1) Severability:**  The Court first addresses plaintiffs' argument that in the absence of a severability clause a single clause's invalidity and unenforceability undermines the entire Agreement, and therefore plaintiffs have no obligations at all under the Agreement.  The Court disagrees.

"In determining whether a contract provision is severable, Florida courts look to the entirety of the agreement." Frankenmuth Mut. Ins. Co. v. Escambia County, Fla., 289 F.3d 723, 728 (11th Cir. 2002).  "[A] contract is indivisible where the entire fulfillment of the contract is contemplated by the parties as the basis of the arrangement." Wilderness Country Club v. Groves, 458

So. 2d 769, 771 (Fla. 2d DCA 1984)(quoting <u>Local No. 234 v. Henley & Beckwith</u>, 66 So. 2d 818 (Fla. 1953)).  It is well established that "[a] bilateral contract is severable where the illegal portion of the contract does not go to its essence and, where, with the illegal portion eliminated, there still remain valid legal promises on one side which are wholly supported by valid legal promises on the other."  <u>Gold, Vann & White, P.A. V. Friedenstab</u>, 831 So. 2d 692, 696 (Fla. 4th DCA 2002)(internal citations omitted).  In short, where an agreement includes an invalid and unenforceable provision, Florida courts do not require a severability clause to save the legal portions of a contract.  Thus, the Court finds that plaintiffs' position is contrary to Florida law.

**(2) Impossibility**:  Plaintiffs argue that certain contract provisions are invalid because plaintiffs cannot perform these obligations, and consequently, plaintiffs are relieved from fulfilling those duties.  Specifically, plaintiffs claim that compliance with paragraph 8 (providing health insurance to Ms. Ellis); paragraph 11 (contributing to Ms. Ellis' retirement plan); and paragraph 14 (allowing Ms. Ellis to have full access to the Firm's databases) is impossible.

Under Florida law, "[t]he doctrine of 'impossibility' must be applied with caution and is not available concerning intervening difficulties which could reasonably have been foreseen and could have been controlled by an express provision of the agreement." <u>Walter T. Embry, Inc. v. LaSalle Nat'l Bank</u>, 792 So. 2d 567, 570

(Fla. 4th DCA 2001). "Where performance of a contract becomes impossible after it is executed, if knowledge of the facts making performance impossible were available to the promisor, he cannot invoke them as a defense to performance." American Aviation, Inc. v. Aero-Flight Serv., Inc., 712 So. 2d 809, 810 (Fla. 4th DCA 1998)(citing Shore Inv. Co. v. Hotel Trinidad, 29 So. 2d 696 (Fla. 1947)). "If the risk of the event that has supervened to cause the alleged frustration was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed." Id. But, "a contracting party will not be relieved from his agreement to perform because of an inability that develops which could have been prevented or avoided, and a promissor will not be permitted to take advantage of an obstacle to performance which he has created or which lay within his power to remove or avoid." Metropolitan Dade County v. Babcock Co., 287 So. 2d 139, 142 n.1 (Fla. 3d DCA 1973).

Plaintiffs premised their impossibility argument on the fact that defendant is no longer an employee of the Firm. Plaintiffs assert that they cannot provide health insurance benefits or contributions to the retirement accounts of non-employees. However, it is undisputed that plaintiffs terminated defendant as an employee, and thus plaintiffs' action appears to have created the claimed obstacle to their performance. Additionally, none of these provisions impact plaintiffs' obligation to pay the agreed-

upon purchase price for the stock.  Further, it is clear from the face of the Agreement that none of these provisions are impossible.  For example, the Agreement did not require plaintiffs to provide health insurance from the Firm's carrier, only that they maintain Ms. Ellis's health insurance.  It did not require that the retirement plan be through the Firm, only that contributions at certain levels be made to Ms. Ellis's retirement plans.  Nothing precludes Ms. Ellis's full access to the Firm's databases.

**(3) The Florida Bar Rules:**  Plaintiffs also claim that paragraphs 2, 9, and 15 violate Florida's Rule of Professional Conduct, and thus, plaintiffs are not required to comply with these provisions.  Paragraphs 2 and 9 refer to sharing attorney's fees with Ms. Ellis, and paragraph 15 refers to an indemnification clause.

Plaintiffs assert that the fee-sharing provisions violate Rules 4-1.5 or 4-5.6 of the Florida Rules of Professional Conduct, and therefore, plaintiffs are excused from performing under the Agreement.  The Court disagrees.  Florida courts have held that it is error to use an ethical rule as a basis to invalidate or render void a provision in a private contract between two parties.  See Lee v. Florida Dep't of Ins. and Treasurer, 586 So. 2d 1185, 1188 (Fla. 1st DCA 1991)("To use rule 4-5.6 as the basis for invalidating a private contractual provision is manifestly beyond the stated scope of the Rules and their intended legal effect.").  In other words, even if a fee-splitting contract divides the fee

between the parties in an inconsistent manner with 4-1.5, a party "may not rely upon the rule to avoid its contractual obligations." Id.  Thus, the Court finds that plaintiffs' argument is without merit.  For the same reasons as the contract's fee-sharing provisions, the Court concludes that plaintiffs cannot invalidate the indemnification clause because the provision may violate the ethical rules.

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion for leave to File Reply (Doc. #28) is **GRANTED**.  The Reply shall remain as filed.

2.  Defendant's Motion for Partial Summary Judgment as to Plaintiffs' Continuing Obligation to Pay Defendant a Share of Firm Revenues (Doc. #19) is **GRANTED**.  The Court finds that plaintiffs are under a continuing obligation under the Agreement to pay defendant a share of the Firm revenues.

**DONE AND ORDERED** at Fort Myers, Florida, this ___1st___ day of September, 2006.

_____
JOHN E. STEELE
United States District Judge

Copies:
Magistrate Judge
Counsel of record